**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | Case No. 18-12378 (CSS) |
| WELDED CONSTRUCTION, L.P., | ) | |
| et al., | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| WELDED CONSTRUCTION, L.P., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adv. Pro. No.: 19-50194 (CSS) |
| | ) | |
| THE WILLIAMS COMPANIES, INC., | ) | |
| WILLIAMS PARTNERS OPERATING | ) | |
| LLC, and TRANSCONTINENTAL | ) | |
| GAS PIPE LINE COMPANY, LLC, | ) | |
| | ) | **Related Adv. Docket No.:  159** |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**MEMORANDUM ORDER**

Upon consideration of *Defendants' Motion for Clarification/Reconsideration of Order Granting Welded's Motion to Compel Production of Audit Documents* filed on September 23, 2020 (the "Reconsideration Motion")[1] filed by defendants, The Williams Companies, Inc., Williams Partners Operating LLC, and Transcontinental Gas Pipe Line Company, LLC ("Transco" and collectively, "Defendants"); the Court having reviewed the Reconsideration Motion and the

---

[1] Adv. D.I. 159.

objections thereto; the Court having heard the statements of counsel and parties in

interest regarding the Reconsideration Motion at a hearing before the Court by

Zoom and Courtcall on November 16, 2020[2]; the Court having found that (i) the

Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334,

(ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (iii) notice of the

Reconsideration Motion and the hearing were sufficient notice under the

circumstances; and (iv) the Court has judicial power to enter a final order;

IT IS HEREBY FOUND AND ORDERED as follows

**BACKGROUND**

1.      In April 2018, Transco retained consultant Oil and Gas Contracts

Services ("OGCS") to perform an audit (the "Audit") of Welded Construction,

L.P.'s ("Welded") invoices to Transco in connection with the Atlantic Sunrise

Project (the "Project").  Effective June 29, 2018, and continuing thereafter, the

Audit was directed by in-house and outside counsel for Defendants in anticipation

of litigation.  Litigation commenced on October 5, 2018, when Defendants filed a

---

[2] The transcript of the hearing is Adv. D.I. 175.  Subsequent to the hearing, the Court entered an order finding the motion moot. (Adv. D.I. 212).  In response, Defendants filed a second motion for clarification (Adv. D.I. 226) (the "Second Reconsideration Motion").  The Court then vacated it original order (Adv. D.I. 230), which has the effect of mooting the Second Reconsideration Motion. As a result, this Memorandum Order constitutes the Court's ruling on the original Reconsideration Motion (Adv. D.I. 159).

complaint in the United States District Court for the Northern District of Oklahoma (the "Oklahoma Complaint").  Welded's bankruptcy petition was filed shortly thereafter, on October 18, 2018.

2.       On January 31, 2019, OGCS issued the Audit Report to Defendants' attorneys, analyzing Welded's invoices through August 2018.  As Welded had not yet submitted its invoices for either September or October 2018, the Audit Report provided only estimates for those months.  On March 27, 2019, OGCS was provided with Welded's September and October 2018 true-up invoices. On May 23, 2019, OGCS was provided with revised versions of Welded's September and October 2018 true-up invoices.  On June 9, 2019, OGCS provided Defendants' attorneys with an update to the Audit Findings first included in the Audit Report, to include the September and October 2018 true-up invoices.  As of June 9, 2019, the Audit was complete.

3.       Shortly thereafter, on October 28, 2019, Welded filed its *Motion for Partial Summary Judgment* (the "Summary Judgment Motion").[3]  In opposition to the Summary Judgment Motion, Defendants submitted, among other things, the Declaration of Phil Burke of OGCS (the "2019 Burke Declaration") in which Mr.

---

[3] Adv. D.I. 50.

Burke discusses the Audit at length.[4]  On June 8, 2020, the Court issued its Opinion,

denying the Summary Judgment Motion.[5]

      4.      On January 8, 2020 (after completion of briefing on the Summary

Judgment Motion and submission of the 2019 Burke Declaration), Welded served

Defendants with document requests, seeking documents pertaining to the Audit.

On March 16, 2020, Welded served OGCS with a subpoena, seeking documents

pertaining to the Audit.  In response to Welded's discovery requests, and in

reliance on Defendants' attorneys' direction of the Audit in anticipation of

litigation, effective June 29, 2018, Defendants objected to and withheld from

production responsive documents in the custody of Defendants and OGCS from

June 29, 2018 and thereafter.  Defendants and OGCS otherwise produced the non-

privileged documents responsive to Welded's written discovery for the period

prior to June 29, 2018.

      5.      Following a meet and confer, pursuant to Local Rule 7026-1(d), on

July 27, 2020, Welded filed *Welded's Motion to Compel Production of Audit Documents*

(the "Motion to Compel").[6]  Throughout the Motion to Compel, Welded argued

---

[4] Adv. D.I. 71, Exh. C.

[5] Adv. D.I. 120 and 121.

[6] Adv. D.I. 135.

its right to discovery in connection with the substance, findings and conclusions of the Audit.  Defendants opposed the Motion to Compel[7] on the grounds that, among other things, the materials sought are protected by the attorney-client privilege and work product doctrine, Defendants did not waive those protections, and Welded did not make the showing required by Fed. R. Civ. P. 26(b)(3).

6.      Following a hearing, on September 9, 2020, the Court issued its Order granting Welded's Motion to Compel.[8]  In so ruling, the Court cited its reliance on the 2019 Burke Declaration, which was filed by Defendants in opposition to the Summary Judgment Motion.[9]  The 2019 Burke Declaration is 15 pages and contains a detailed exhibit identifying the 'true up' amounts owed as concluded by the Audit.  The Court identified Defendants' reliance on the "Audit's conclusions" as set forth in the 2019 Burke Declaration as grounds for granting the motion to compel and ordering production of "the underlying documents."

---

[7]  Adv. D.I. 140.

[8]  Adv. D.I. 155 (the "Order Compelling Production").

[9]  *Welded Constr., L.P. v. The Williams Cos., Inc. (In re Welded Constr., L.P.)*, 616 B.R. 649, 662 (Bankr. D. Del. 2020) ("Even if the [2019] Burke Declaration does not comprehensively explain the contractual basis for concluding that the Disputed Labor Costs were erroneously invoiced, the Burke Declaration— a sworn statement of an independent auditor that describes the findings of his audit—is sufficiently probative of disputed Labor Costs to deny the Motion.").

7.      In October 2020, in response to the Order Compelling Production,

Defendants and OGCS produced to Welded 2,534 documents previously retained

as protected by the attorney-client privilege and/or the work product doctrine.

8.      However, Defendants retained 196 documents on grounds that they

constitute "Opinion Work Product,"[10] which are afforded almost absolute

protection from discovery – even in the context of an implied waiver – and were

not, in Defendants' minds, covered by the Order Compelling Production.  On that

---

[10] Although not discussed in the Reconsideration Motion, pursuant to the Second Reconsideration Motion, Defendants represent that the "Opinion Work Product" consists of the following:

> Hon. John F. Heil III: Former outside counsel for Defendants; Current United States District Court Judge for the Eastern District of Oklahoma.
>
> John Rogers, Esq.: Former outside counsel for Defendants.
>
> Steven Soule, Esq.: Current outside counsel for Defendants.
>
> Shelly Ewald, Esq.: Current outside counsel for Defendants.
>
> Lucian Murley, Esq.: Current outside counsel for Defendants.
>
> Jeremiah Vandermark, Esq.: Former outside counsel for Defendants.
>
> Mary Edmonds, Esq.: Assistant General Counsel for Defendants.
>
> Karissa Cottom, Esq.: Managing Attorney for Defendants.
>
> Jeffry Goebel, Esq.: Senior Counsel for Defendants.
>
> Phil Burke: OGCS, Defendants' consulting expert.
>
> Adrian Greene: OGCS, Defendants' consulting expert.

Defendants further represent that only three of the 196 Opinion Work Product documents (2 emails, 1 attachment) were created before the litigation regarding the Project commenced on October 4, 2018. All of the retained documents reflect the mental impressions, conclusions, opinions, and legal theories of Defendants' attorneys or other representatives concerning the litigation.  *See* Second Reconsideration Motion at ¶¶ 9-10.

basis, these 196 documents were not produced to Welded in October and are now

the subject of the present Reconsideration Motion.  In the Reconsideration Motion,

Defendants are seeking clarification and a ruling from the Court that the 196

documents constitute protected Opinion Work Product.

## ANALYSIS

9.      In the Motion to Compel, Welded sought to discover the "mental

impressions, opinions, and theories of counsel and Defendants' representatives

that formed the basis of the OGCS pre-litigation investigation that commenced

June 29, 2020."[11]

10.     The Court's Order Compelling Production states:

> the Court finds the Defendants have complete[ly]
> waived the protection of the attorney client privilege
> and work product doctrine in connection with the
> Audit.[12]

---

[11] *Defendants' Objection and Opposition to Debtor-Plaintiff's Motion to Compel Production of Documents* at 15 (Adv. D. I. 141).  *See also id.* at 3 ("[T]hose materials will remain protected as the mental impressions, conclusions, opinions, and legal theories of the Defendants' attorneys and representatives."); *id.* at 11 ("If not, those materials will remain protected as the mental impressions, conclusions, opinions, and legal theories of the Defendants' attorneys and representatives."); *id.* at 15 ("Here, the protected materials in question were prepared by in-house counsel or Defendants' representatives, for the purpose of legal advice, reflect mental impressions, opinions and legal theories, and therefore fall within the zone of privacy and legal strategy from which Welded must be excluded."); *id.* at 16 ("[I]n broad strokes, Welded seeks to compel all materials related to the OGCS investigation.").

[12] Order Compelling Production at ¶5.

11.     Federal Rule of Civil Procedure 59(e), made applicable by Federal

Rule of Bankruptcy Procedure 9023, governs motions for reconsideration.

Additionally, motions for clarification are often evaluated under the same

standard used to evaluate motions for reconsideration.[13]

> The fundamental purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." Under Rule 59(e), a motion to alter or amend a judgment may be granted if the party seeking reconsideration establishes at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.
>
> A motion for reconsideration may not be used as a vehicle to relitigate issues the Court has already decided, nor should Rule 59(e) be used to advance arguments that a party could have made before judgment, but neglected to do so. However, a prior decision should be reconsidered where it appears the Court has overlooked or misapprehended some factual matter that might reasonably have altered the result reached by the Court.  As this Court has previously stated, while it is true that a motion for reconsideration should not be used to reargue the facts

---

[13] *NJ Dep't of Env't. Prot. v. Occidental Chem. Corp. (In re Maxus Energy Corp.)*, 571 B.R. 650, 654–55 (Bankr. D. Del. 2017); *In re Tribune Co.*, 464 B.R. 208, 212-13 (Bankr. D. Del. 2011).

or applicable law, it is appropriate when the facts were
presented but overlooked by the Court.[14]

12.     Defendants bear a "heavy burden" and must show "more than a
mere recapitulation of the cases and arguments considered by the court before
rendering its original decision."[15]

13.     Here, there is no change in intervening law and no new evidence.
Although not explicit (in fact, Defendants never discuss the controlling standard
governing their request in the Reconsideration Motion), Defendants allege that
there would manifest injustice[16] if the Opinion Work Product is produced.
However, the underlying issue of the work product doctrine is not new.[17]
Furthermore, Defendants are raising an argument they could and should have
raised in response to the Motion to Compel, in which Welded specifically
requested production of documents containing the "mental impressions, opinions,

---

[14] *Maxus Energy Corp.*, 571 B.R. at 654–55 (quotation marks, text modifications and footnotes omitted). *See also FTI Consulting, Inc. v. Sweeny (In re Centaur, LLC)*, No. 10-10799 (KJC), 2019 WL 2122952, at *3 (Bankr. D. Del. May 13, 2019) ("A motion to reconsider cannot be used to argue issues that were inexcusably absent from previous proceedings, and it is anything but manifestly unjust to prevent the Defendants from arguing defenses that they have already had the opportunity to argue.").

[15] *LG Elecs., Inc. v. ASKO Appliances, Inc.*, No. CIV.A. 08-828 JAP, 2011 WL 1337321, at *1 (D. Del. Apr. 7, 2011) (citation and internal quotation marks omitted); *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995) (A motion for reconsideration is not a "second bite at the apple," a party cannot simply change theories and try again.).

[16] Such situations are seldom present. *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990) (citation omitted).

[17] *See, supra* fn. 11.

and theories of *counsel*."[18]  Moreover, this issue was considered and rejected in the

Motion to Compel – as noted above, the Court found:  that "the Defendants have

complete[ly] waived the protection of the attorney client privilege and work

product doctrine in connection with the Audit."[19]  The Court then ordered that

"[t]he Defendants shall produce and instruct OGCS to produce, without redaction,

all documents related to the Audit."[20]

14.     While the Court believes that its prior ruling clearly included

Opinion Work Product and required its production, it will, nonetheless,

specifically address the issue here.

15.     Rule 26(b)(3) of the Federal Rules of Civil Procedure establishes two

tiers of protection: first, work prepared in anticipation of litigation by an attorney

or his agent is discoverable only upon a showing of need and hardship; second,

"core" or "opinion" work product that encompasses the "mental impressions,

conclusions, opinion, or legal theories of an attorney or other representative of a

---

[18] *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991), *aff'd sub nom. United States v. Carper*, 22 F.3d 303 (3d Cir. 1994) ("Reconsideration should not be granted where it would merely accomplish repetition of arguments that were or should have been presented to the court previously." (citation omitted)).

[19] Order Compelling Production at ¶5.

[20] Order Compelling Production at p. 3.

party concerning the litigation" is "generally afforded near absolute protection
from discovery."[21]

16.     Defendants cite to *In re Kellogg Brown & Root, Inc.*[22] in support of their
position that it would be error not to protect their opinion work product.[23]  In
*Kellogg Brown*, the employee ("Barko") of a defense contractor ("KBR") filed a
complaint, alleging that KBR had defrauded the federal government.[24]  In a
footnote in KBR's summary judgment brief, it stated that (1) it investigates
allegations of fraud and makes a report to the government when there is a
reasonable basis to believe fraud occurred, and (2) it investigated Barko's
allegations and did not make a report to the government based on those
investigations.[25]  The lower court, finding that it had to draw the "unavoidable"

---

[21] *In re Cendant Corp. Securities Litig.*, 343 F.3d 658, 663 (3d Cir. 2003).

[22] 796 F.3d 137 (D.C. Cir. 2015).

[23] Motion at ¶¶ 13 and 14.

[24] *Kellogg Brown*, 796 F.3d at 140.

[25] *Id.* at 141-42.  In addition, Barko noticed a 30(b)(6) deposition which included the topic of the
investigation.  The witness, in preparing for his deposition, reviewed the underlying documents.
The *Kellogg Brown* court noted that the Barko could not "waive" the work product doctrine by
noticing a deposition of the topic.  *Id.* at 145 ("Barko cannot "overcome the privilege by putting
[the COBC investigation] in issue" at the deposition, and then demanding under Rule 612 to see
the investigatory documents the witness used to prepare." (citation omitted)).  In other words,
Barko made the investigation an issue in the deposition and then sought discovery based on that
issue.  This is not situation facing this Court here.  Welded did not put the substance of the Audit
in play and then demand discovery related thereto – *here, Defendants relied on the Audit in making
claims and defenses before the Court, putting the underlying facts and documents at issue prior to Welded's
discovery requests and subpoena.*

inference that KBR's investigation found no fraud, allowed discovery into the investigation and reports; however, the *Kellogg Brown* court reversed. The *Kellogg Brown* court noted that such waivers were possible, noting that on one hand a party asserting attorney-client privilege "'cannot be allowed, after disclosing as much as he pleases, to withhold the remainder.'"[26] The court continued that, on the other hand, if there is a "general assertion lacking substantive content that one's attorney has examined a certain matter is not sufficient to waive the attorney-client privilege."[27] The *Kellogg Brown* court went on to hold that the footnote was not enough to waive the protection afforded opinion work product.[28]

17.     Here, Defendants substantially relied on the Audit in representations to Welded and the Court. Defendants have asserted that the Audit "revealed wrongdoing" and repeatedly sought specific relief because of the Audit, including through the Oklahoma Complaint, Transco's proof of claim (claim no. 646) (the "Proof of Claim"), Transco's counterclaims, the 2019 Burke Declaration, and the Defendant's summary judgment response.[29] Defendants also repeatedly

---

[26] *Id.* (citing *In re Sealed Case*, 676 F.2d 793, 807 (D.C. Cir. 1982) (further citations omitted)).

[27] *Id.* at 145-46 (*quoting United States v. White*, 887 F.2d 267, 271 (D.C. Cir.1989)).

[28] *Id.* at 150.

[29] *See, e.g.,* Order Compelling Production at ¶ 4 ("As Defendants have submitted the Audit's conclusions to the Court in opposition to a summary judgement motion, successfully arguing that the Court should rely on those very same conclusions, Defendants cannot now conceal the

represented to Welded and the Court that the Audit was independent.  In other words, Defendants cannot disclose as much as the Audit as it pleases and then claim privilege to the rest.  The Defendant's reliance on the Audit is a far cry from the footnote at issue in *Kellogg Brown.*

18.     As recognized by the *Kellogg Brown* court, the opinion work product privilege is not absolute.[30]  The issue raised by Defendants regarding the Opinion Work Product is more akin to the case of *Doe 1 v. Baylor University*,[31] wherein the Court found that the defendant had waived work product by putting at issues the actions it took as a result of the expert's investigation.  In *Baylor University*, female students who were sexually assaulted while enrolled as students at the university brought an action against the university, asserting claims that the university's policy of discouraging them from reporting that they had been sexually assaulted, and failing to investigate adequately each of the assaults created a harassing education environment that deprived them of a normal college education.  The students moved to compel the production of work product related to an

---

underlying documents as these of a non-testifying expert. To rule otherwise would allow the Defendants to use the Audit as a litigation weapon without allowing discovery into its details.").

[30]  *Kellogg Brown*, 796 F.3d at 146 (making partial disclosures of privileged information will waiver attorney-client and/or work product protection).

[31]  335 F.R.D. 476 (W.D. Tex. 2020).

investigation and the implementation of the university's reforms.  The university

had hired a law firm to conduct an independent and external review of the

university's institutional responses and compliance issues.   Thereafter, the

university published two documents summarizing the law firm's findings and

recommendations.   In addition, the law firm made presentations to the

university's board of regents.  The student-plaintiffs sought the opinion work

product related to the law firm's investigation and recommendations.

19.     The *Baylor University* court found that the university was using the

opinion work product as both a sword and a shield.[32]  The university sought to

show that it responded properly to reports of student sexual assault and that it

adopted policy reforms, but wanted to deny plaintiff access to the lawyer's report

to see how the university's corrective actions compared to their attorney's

recommendations.[33]  The *Baylor University* court held that the "primary rationale

for granting qualified protection to attorney work product is to shield an

attorney's case planning and strategy from his adversary in litigation."[34]

"Determining when this protection has been waived is for all practical purposes a

---

[32] *Id.* at 495-96.

[33] *Id.* at 496.

[34] *Id.*

balancing of the interest of promoting the adversarial system against the interest of determining the truth in a given case. 'When a party seeks a greater advantage from its control over work-product than the law must provide to maintain a healthy adversary system, the privilege should give way.'"[35]  In this instance, the law firm's work was in anticipation of litigation, but the law firm was not going to sue or defend the university.  Rather, the firm's role was in the policy, auditing and investigating, and was not for case planning or strategy.[36]

20.     Similarly, here, Defendants hired OGCS to audit and to investigate Welded billing practices in anticipation of litigation.  OGCS's sole role was to investigate and to perform an audit.  Furthermore, Defendants used the Audit to make allegations, claims and defenses (including through the Oklahoma Complaint, the Proof of Claim, Transco's counterclaims, the 2019 Burke Declaration, and the Defendant's summary judgment response).  Much like in *Baylor University*, Defendants cannot use OGCS's report as both a sword and a shield – Defendants cannot place the Audit at issue and claim that the Audit

---

[35] *Id.* (*quoting Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2002) (further citations omitted)).

[36] *Id.*

"revealed wrongdoing" and then not give Welded the requisite information to test the validity of those statements.

21.    As a result, and consistent with the Court's Order Compelling Production, the Reconsideration Motion is DENIED with prejudice and the 196 documents held back by Defendants as "Opinion Work Product" must be produced within 14 days from the issuance of this Order.


_____
Christopher S. Sontchi, Chief Judge
United States Bankruptcy Court

Dated: February 15, 2021

16